IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA DOBROWOLSKI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | No. |
| INTELIUS, INC., a Delaware corporation, | |
| Defendants. | |

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, defendant Intelius, Inc. ("Intelius")[1] hereby removes to the United States District Court, Northern District of Illinois, Eastern Division, the above-styled action, pending as Case No. 2017-CH-01177 in the Circuit Court of Cook County, Illinois, Chancery Division (the "State Court Action"). In support, Intelius states the following:

**INTRODUCTION**

1.      On January 25, 2017, plaintiff Anna Dobrowolski commenced a putative class action against Intelius. A copy of the Class Action Complaint and Demand for Jury Trial (the "Complaint") is attached as **Exhibit A**. The Complaint alleges that Intelius violated the Illinois Right of Publicity Act, 765 ILCS 1075, *et seq*. ("IRPA"), by making information about individuals available on the Web to the public for a fee. *Id.*

---

[1] Defendant formally changed its corporate name to PeopleConnect, Inc. on January 1, 2017. However, Defendant refers to itself as "Intelius" in this brief to be consistent with the language used in the Complaint.

2.     This is not the first such case to be filed against Intelius by Plaintiff.  On January 19, 2017, Plaintiff filed a virtually identical complaint against Intelius in this Court as Case No. 17-cv-00429.  A copy of that Class Action Complaint and Demand for Jury Trial (the "Federal Complaint") is attached as **Exhibit B**.  The substance of the Federal Complaint was the same as the Complaint, but it contained federal jurisdictional allegations.  For example, the Federal Complaint alleged that "[t]his Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the putative Class is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action."  (Federal Complaint, at ¶ 9).

3.     Notably, the allegations in the Federal Complaint were also very similar to a case that was already pending before this Court at that time.  On November 23, 2016, Intelius removed to federal court a substantially similar case alleging IRPA violations, titled *Siegel v. Inome, Inc.*, Case No. 16-cv-10856.  A true and correct copy of the *Siegel* Complaint is attached as **Exhibit C**.  The plaintiff in *Siegel* made no effort to remand the case.  On January 12, 2017, Intelius moved to dismiss the *Siegel* case.  Seven days later, the Federal Complaint was filed.  Four days after that, on January 23, the plaintiff in *Siegel* voluntarily dismissed his case.  On January 25, Plaintiff dismissed her Federal Complaint, filing the State Court Action that same day.

4.     This procedural gamesmanship is nothing more than transparent forum-shopping that has forced Intelius to spend additional resources to bring these class claims right back to the

place where they were pending three months ago.[2]  Having already filed this *exact* case (same parties, same claims, same counsel) once in federal court, Plaintiff has no good faith argument that federal jurisdiction is inappropriate.  This conclusion is further supported by the fact that a substantially similar case was removed to federal court and separate counsel chose not to challenge the Court's jurisdiction.

## BASIS OF JURISDICTION UNDER CAFA

5.     Intelius is entitled to removal of the State Court Action pursuant to Class Action Fairness Act ("CAFA"), codified under 28 U.S.C. § 1332(d).

6.     CAFA vests the United States District Courts with original jurisdiction when the aggregate amount in controversy for all class members exceeds $5,000,000 exclusive of interest and costs and any member of the class of plaintiffs is a citizen of a state different from any defendant.  Those requirements are satisfied in this action.

7.     Neither the permissive nor mandatory provisions of CAFA for declining original jurisdiction is applicable to this action.  Accordingly, federal jurisdiction is mandatory under CAFA.

**(a)     This matter is a class action as defined by CAFA.**

8.     The State Court Action is a class action as defined by CAFA.  CAFA provides:

> [T]he term "class action" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or

---

[2] In fact, the forum-shopping engaged in by Plaintiff's counsel has so unreasonably and vexatiously multiplied these proceedings that the excess costs, expenses, and fees incurred because of this conduct should be awarded to Intelius under 28 U.S. Code § 1927.  Plaintiff would have been a member of the putative class in *Siegel*, but instead of joining in that case, Plaintiff's counsel filed separately in federal court.  Then, after *Siegel* was voluntarily dismissed without explanation only days later, Plaintiff voluntarily dismissed its Federal Complaint and refiled in the State Court Action.  As a result, Intelius was left with nothing to show for three months of litigation in *Siegel*, and is now forced to once again remove this matter to federal court.

rule of judicial procedure authorizing an action to be brought by 1
or more representative persons as a class action.

§ 1332(d)(1)(B).

9.      Plaintiff filed the State Court Action as a putative class action on behalf of herself

and others similarly situated.  (Compl., at ¶¶ 34-38). Plaintiff's Complaint thus falls within the

definition of a class action under CAFA.

**(b)     The putative class exceeds 100 members.**

10.     CAFA requires that a putative class consist of at least 100 persons.  28 U.S.C.

§ 1332(d)(5).  This Complaint here alleges that the class is so large that "individual joinder is

impracticable"  (Compl., at ¶ 37), and Plaintiff previously filed this case in federal court,

implicitly acknowledging that the class exceeds 100 members.  (*See generally* Federal

Complaint).

11.     Notably, the *Siegel* Complaint explicitly alleged that the substantially similar

class had "hundreds or thousands of members."  (*Siegel* Complaint, at ¶ 25).

**(c)     Minimal diversity exists.**

12.     CAFA liberalizes the diversity requirements under traditional diversity

jurisdiction by providing that CAFA applies when:

any member of a class of plaintiffs is a citizen of a State different
from any defendant. . . .

§ 1332(d)(2)(A).

13.     Plaintiff is a citizen of Illinois.  (Compl., at ¶ 7).

14.     Intelius is a Delaware corporation with its principal place of business in Bellevue,

Washington.  (Compl., at ¶8).  It thus is not a citizen of Illinois.  28 U.S.C. § 1332(c)(1).

15.     The diversity of citizenship between Plaintiff and Intelius satisfies the diversity

requirements of CAFA.

      **(d)**    **The CAFA amount in controversy requirement is satisfied.**

16.     CAFA creates original jurisdiction for "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." § 1332(d)(2). Unlike traditional amount in controversy review, CAFA requires that the claims of individual class members be aggregated:

> In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

§ 1332(d)(6).

17.     "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014); *see also Bullard v. Burlington Northern Santa Fe Ry.*, 556 F. Supp. 2d 858, 859 (N.D. Ill. 2008) (citing *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 449 (7th Cir. 2005)). "Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses jurisdiction." *Brill*, 427 F.3d at 448; *see also Oshana v. Coca-Cola Co*., 472 F.3d 506, 511 (7th Cir. 2006) (same).

18.     As an initial matter, Plaintiff's assertions in the previously filed Federal Complaint clearly state that the $5,000,000 amount in controversy threshold is met. Plaintiff originally claimed, in no uncertain terms, that "the amount in controversy exceeds $5,000,000, exclusive of interest and costs." (Federal Complaint, at ¶ 9). This alone provides a plausible basis for finding that the amount in controversy exceeds the jurisdictional threshold.

19.     But the allegations in the Complaint pending in the State Court Action also provide support for such a conclusion.  Plaintiff alleges that she and the putative class have suffered (at a minimum) $1,000 in statutory damages per IRPA violation.  (Compl., at Prayer for Relief, ¶ d).  Even if these were the *only* damages used to calculate the amount in controversy, there only would need to be 5,001 members in the class to exceed the $5,000,000 threshold.  *See Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (where plaintiff alleged class was "entitled to civil penalties in amounts up to one thousand dollars ($1,000) per violation, . . . defendant need only demonstrate that there are at least 5,001 putative class claims").

20.     The amount in controversy threshold is not limited to the statutory damage claim but also includes all other forms of potential relief, including the value of the injunctive relief sought, *id.* at ¶ c, punitive damages, *id.* at ¶ e, and attorneys' fees and costs, *id.* at ¶ f.  *See De Falco v. Vibram USA, Inc.*, 2013 U.S. Dist. LEXIS 36679, at *18 (N.D. Ill. Mar. 18, 2013) (citing *Oshana*, 472 F.3d 512) ("[T]he Court is entitled to consider potential punitive damages as part of the amount in controversy."); *Home Depot, Inc. v. Rickher*, 2006 U.S. App. LEXIS 32391, at *3 (7th Cir. May 24, 2006) (citing *Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004)) ("The amount in controversy includes . . . 'the cost a defendant incurs in complying with injunctive relief.'").  With respect to punitive damage awards, it is well established that they often can eclipse actual or statutory damage awards.  *See, e.g., Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2001) (class may possibly recover more than $3 million in punitive damages despite $600,000 in actual damages); *Back Doctor Ltd. v. Metro. Prop. & Cas. Ins. Co*., 637 F.3d 827, 831 (7th Cir. 2011) ($2.1 million in punitive damages possible even when not expressly sought by plaintiff in complaint).  Even assuming there were

only 2,000 putative class members,[3] a punitive damages award for a $2 million statutory judgment (2,000 x $1,000 = $2,000,000) could be $10 million (5 x $2,000,000 = $10,000,000) if a punitive damages multiplier of five is applied. That would be well in excess of the $5 million amount in controversy threshold.

21.     U.S. Census data indicates that there are a little fewer than 13 million residents in the state of Illinois, and Plaintiff limits the alleged plaintiff class to Illinois residents. (Compl., at ¶ 34). If Intelius made or makes data available during the alleged class period for at least 5,001 of those Illinois residents (only roughly .04 percent of Illinois residents), then the $5 million threshold is crossed. Intelius does indeed make data available for more than 5,001 Illinois residents (far more). Thus the CAFA amount in controversy requirement is satisfied.

22.     This is consistent with the allegations in the Complaint. Plaintiff acknowledges that "Intelius searches billions of public records instantly." (Compl., at n. 3). U.S. Census data indicates that Illinois residents account for approximately 4 percent of the U.S. population. If 4 percent of at least 2 billion records relate to Illinois residents, that suggests that more than 80 million public records would be at issue. Unless Intelius has access to more than 16,000 public records for each Illinois resident (which is extremely implausible), this data suggests that the size of the putative class will easily exceed 5,001 individuals (and the amount in controversy will exceed $5,000,000).

23.     This Notice of Removal is based solely on the allegations of the Complaint and does not admit the truth of the facts asserted in the Complaint, the validity of Plaintiff's claim, or the existence of damages.

---

[3] As noted previously, the *Siegel* Complaint alleged that a substantially similar class contained "thousands" of members. (*Siegel* Complaint, at ¶ 9).

      (e)      **The exceptions to CAFA jurisdiction do not apply.**

24.    Plaintiff bears the burden of establishing any applicable exceptions to CAFA jurisdiction. *Marconi v. Ind. Mun. Power Agency, ISC, Inc.*, 2015 U.S. Dist. LEXIS 106813, at *21 (N.D. Ill. Aug. 13, 2015) (citing *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675, 680-81 (7th Cir. 2006)).

25.    CAFA provides one discretionary exception and two mandatory exceptions to application of federal jurisdiction. 28 U.S.C. §§ 1332(d)(3)-(4).

26.    But all three exceptions include the requirement that the defendant is a citizen of the state in which the action was originally filed. 28 U.S.C. §§ 1332(d)(3)-(4).

27.    Here, because Intelius is not a citizen of the state of Illinois, none of the CAFA exceptions applies.

## 28 U.S.C. § 1446 REQUIREMENTS

28.    <u>Removal is timely</u>. A notice of removal may be filed within 30 days after the defendant receives a copy of the initial pleading, motion, or other paper from which it may be ascertained that the case is removable. 28 U.S.C. § 1446(b). Intelius received a copy of the initial pleading on February 2, 2017. This Notice of Removal is thus timely filed.

29.    <u>Removal to proper court</u>. This Court is part of the "district and division within which" this action was filed — Cook County, Illinois. 28 U.S.C. § 1446(a).

30.    <u>Pleadings and process</u>. Pursuant to 28 U.S.C. § 1446(a), a "copy of all process, pleadings, and orders served upon" Intelius are attached to this Notice of Removal as Exhibit A. Intelius has not answered or otherwise filed a response to the Complaint.

31.    <u>Notice to state court</u>. A copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Cook County, Illinois, and is being served on counsel of record,

consistent with 28 U.S.C. §§ 1446(a), (d). The Circuit Court of Cook County, Illinois, is located within this District.

32.     Intelius hereby reserves all defenses and objections to Plaintiff's Complaint, including but not limited to: lack of personal jurisdiction, improper venue, *forum non conveniens*, insufficiency of process, insufficiency of service of process, lack of standing, failure to state a claim, and failure to satisfy the requirements for class certification.

WHEREFORE, Intelius removes this action to this Court for further proceedings according to law.

Respectfully submitted,

INTELIUS, INC.

By:     /s/ Blaine C. Kimrey
        One of its attorneys

Blaine C. Kimrey
Bryan K. Clark
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 312 609 7500

Dated: February 23, 2017

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing was served by

email and regular U.S. Mail on February 23, 2017, to:

> Benjamin H. Richman
> brichman@edelson.com
> Ari J. Scharg
> ascharg@edelson.com
> EDELSON PC
> 350 N. LaSalle St., 13th Floor
> Chicago, Illinois 60654

*/s/ Blaine C. Kimrey*
Blaine C. Kimrey