**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANNA DOBROWOLSKI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 17-cv-01406 |
| v. | Judge Manish S. Shah |
| | Mag. Judge Sidney I. Schenkier |
| INTELIUS, INC., a Delaware corporation, | |
| Defendant. | |

## DEFENDANT INTELIUS, INC.'S MEMORANDUM IN SUPPORT OF RULE 12(B)(2) AND 12(B)(6) MOTION TO DISMISS

# <u>TABLE OF CONTENTS</u>

**Page**

I.     Introduction ........................................................................................................... 1

II.    Procedural history ................................................................................................ 2

III.   Allegations ........................................................................................................... 3

IV.   Dismissal standards .............................................................................................. 5

V.    Argument .............................................................................................................. 6

    A.     Dobrowolski has failed to properly plead and cannot make a *prima facie* showing of personal jurisdiction .......................................................... 6

    B.     The First Amendment bars liability for the facts as alleged ................................ 11

    C.     Intelius's conduct as alleged is exempt from liability under IRPA ..................... 14

    D.    CDA Section 230 bars recovery based on the allegations ................................... 16

    E.     The Court should award Intelius its fees ............................................................. 19

VI.   Conclusion ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ............................................................................7, 8, 9

*AFI Holdings of Ill., Inc. v. NBC*,
   2017 U.S. Dist. LEXIS 34077 (N.D. Ill. Mar. 9, 2017).......................................9, 10

*Appert v. Morgan Stanley Dean Witter, Inc.*,
   673 F.3d 609 (7th Cir. 2012) ....................................................................................6

*AS Engine Leasing, LLC v. Vision Airlines, Inc.*,
   2014 U.S. Dist. LEXIS 161518 (N.D. Ill. Nov. 18, 2014)......................................10

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
   480 U.S. 102 (1987)................................................................................................11

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) ...........................................................................16, 17

*Best v. Berard*,
   776 F. Supp. 2d 752 (N.D. Ill. 2011) ....................................................................16

*Bittman v. Fox*,
   2016 U.S. Dist. LEXIS 63948 (N.D. Ill. May 16, 2016) .........................................9

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ....................................................................................4

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983)..................................................................................................12

*Boyer v. BNSF Ry. Co.*,
   832 F.3d 699 (7th Cir. 2016) ..................................................................................19

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)................................................................................................11

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
   149 F.3d 679 (7th Cir. 1998) ..................................................................................12

*Cook Assocs. v. E.G. Snyder Co.*,
   1988 U.S. Dist. LEXIS 14518 (N.D. Ill. Dec. 21, 1988) .........................................6

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975)................................................................13

*Dart v. Craigslist, Inc.*,
665 F. Supp. 2d 961 (N.D. Ill. 2009) ..............................................16, 17

*Doe v. Friendfinder Network, Inc.*,
540 F. Supp. 2d 288 (D.N.H. 2008)................................................18

*E.E.O.C. v. Concentra Health Serv., Inc.*,
496 F.3d 773 (7th Cir. 2007) ......................................................6

*Gullen v. Facebook.com, Inc.*,
2016 U.S. Dist. LEXIS 6958 (N.D. Ill. Jan. 21, 2016) .................................7, 8, 9, 10

*Hooker v. Columbia Pictures Indus. Inc.*,
551 F. Supp. 1060 (N.D. Ill. 1982) ................................................15

*Jones v. Dirty World Entm't Recordings LLC*,
755 F.3d 398 (6th Cir. 2014) ......................................................18

*Jordan v. Jewel Food Stores*,
743 F.3d 509 (7th Cir. 2014) ......................................................13

*Kipp v. SKI Enter. Corp.*,
783 F.3d 695 (7th Cir. 2015) ......................................................7

*Kirby v. Sega of Am., Inc.*,
144 Cal. App. 4th 47 (Cal. App. 2d Dist. 2006) ....................................19

*Klump v. Duffus*,
71 F.3d 1368 (7th Cir. 1995) ......................................................7

*La. Pac. Corp. v. James Hardie Bldg. Prods.*,
2013 U.S. Dist. LEXIS 94875 (N.D. Cal. July 8, 2013)...............................3, 10

*Love v. Mail on Sunday*,
2007 U.S. Dist. LEXIS 97061 (C.D. Cal. Sept. 7, 2007)..............................19

*Mi-Jack Sys. & Tech., LLC v. Babaco Alarm Sys.*,
2013 U.S. Dist. LEXIS 165295 (N.D. Ill. Nov. 20, 2013)..............................6

*Nieman v. Versuslaw, Inc.*,
512 F. App'x 635 (7th Cir. 2013) ..............................................13, 14, 17

*Obado v. Magedson*,
    2014 U.S. Dist. LEXIS 104575 (D.N.J. 2014),
    *aff'd*, 612 F. App'x 90 (3d Cir. 2915) ............................................................18, 19

*Perfect 10, Inc. v. CC Bill LLC*,
    488 F.3d 751 (9th Cir. 2007) ...............................................................................19

*Steel Warehouse of Wisconsin, Inc. v. Leach*,
    154 F.3d 712 (7th Cir. 1998) ..................................................................................5

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) ................................................................................15

*Trudeau v. Lanoue*,
    2006 U.S. Dist. LEXIS 7956 (N.D. Ill. Mar. 2, 2006) ..........................................15

*Vrdolyak v. Avvo, Inc.*,
    2016 U.S. Dist. LEXIS 123578 (N.D. Ill. Sept. 12, 2016) ..............................12, 13

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ............................................................................................8

*Welk v. GMAC Mortg.*,
    850 F. Supp. 2d 976, 999 (D. Minn. 2012) ..........................................................20

*Zglobicki v. Travel Channel, LLC, et al.*,
    2012 WL 725570 (N.D. Ill. Feb. 2, 2012) ............................................................16

**Statutes**

28 U.S.C. § 1332(d)(2) ...................................................................................................2

735 ILCS 5/2-209 ..........................................................................................................7

Communications Decency Act, Section 230, 47 U.S.C. § 230............................ *passim*

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ..............................9

Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq* .................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b) ............................................................................................ *passim*

Fed. R. Evid. 201(b)......................................................................................................15

## I.     Introduction

Plaintiff Anna Dobrowolski has sued defendant Intelius, Inc.,[1] because Intelius allegedly misappropriates people's names to sell access to publicly available information about them. Dobrowolski does not allege that Intelius used data about her (what she characterizes as her "identity") to sell something else (such as coffee mugs, T-shirts, or vacation packages). Rather, Dobrowolski alleges that the product or service sold is the data itself. No court nationwide has found in any published decision that the advertisement or sale of such data violates any right of publicity. Extremely sound First Amendment principles support that reality, which Dobrowolski should not be allowed to alter. Dobrowolski alleges that Intelius uses a person's name in response to Internet search queries of that name *even if* the Intelius database lacks information on that person. Compl. at ¶ 23. But Dobrowolski does not allege that the Intelius database lacks information about her or anyone else sharing her name, thus her claim, to the extent based on a theory of "bait and switch" name use, fails (and the reality is that the search functionality by its very nature automatically returns the name that is entered by the Internet user).[2]

But before the Court reaches the merits, the question of personal jurisdiction should be addressed (and it should be resolved on the pleadings without any discovery). Dobrowolski has not properly pled, and cannot make a *prima facie* showing of, personal jurisdiction over Intelius in Illinois. Thus, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2). If, however, the Court does not dismiss under Rule 12(b)(2) without discovery, Intelius requests that the Court dismiss because (1) the First Amendment bars Dobrowolski's claim; (2) Dobrowolski has

---

[1] Defendant formally changed its corporate name to PeopleConnect, Inc., on January 1, 2017. But Defendant refers to itself as "Intelius" in this motion to be consistent with the language used in the Complaint.

[2] Incidentally, the Intelius database contains information on several individuals named "Anna Dobrowolski." But that fact is not essential to the Court's dismissing this case with prejudice.

failed to state a claim under the Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.* ("IRPA"); and (3) Dobrowolski's claim fails under Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("CDA"). Finally, if Intelius prevails on this motion, the Court should award Intelius recovery of its attorneys' fees incurred in defending against this action.

## II. Procedural history

This is not the first case to be filed against Intelius by Plaintiff. On January 19, 2017, Plaintiff filed a virtually identical complaint against Intelius in this Court as Case No. 17-cv-00429. The substance of the complaint in that action was the same as the Complaint in this case (*see* Docket Entry 1-A ("Compl.")), but it contained federal jurisdictional allegations. For example, the complaint in that case alleged that "[t]his Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the putative Class is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action." (Case No. 17-cv-00429, Docket Entry 1, at ¶ 9).

Notably, the allegations in Dobrowolski's original federal case were also very similar to a case that was already pending in the Northern District of Illinois at that time. On November 23, 2016, Intelius removed to federal court a substantially similar case alleging IRPA violations, titled *Siegel v. Inome, Inc.*, Case No. 16-cv-10856. On January 12, 2017, Intelius moved to dismiss the *Siegel* case. Seven days later, Dobrowolski's original federal case was filed. Four days after that, on January 23, the plaintiff in *Siegel* voluntarily dismissed his case. On January 25, Dombrowolski dismissed her original federal case, filing the state court action that same day.

In response to the state court action, Intelius was forced to remove the action, which it did on February 23, 2017 (*see* Docket Entry 1), and then seek to have the case reassigned to this

Court (*see* Docket Entry 13).  Now, nearly three months after Intelius filed its original motion to dismiss in the *Siegel* matter, Intelius once again moves to dismiss the claims at issue in this case.

## III.    Allegations

Intelius is "an online service that sells 'detailed profile reports' about people to anybody willing to pay for them.  These reports are based upon information compiled from 'extensive databases and ***public record repositories***.'"  Compl. at ¶ 1 (quoting https://www.corp.intelius.com) (emphasis added).  Dobrowolski purports to bring a putative class action against Intelius for alleged misappropriation of identity in violation of IRPA.  *Id.* at ¶ 6.

Dobrowolski alleges that Web searches of people's names return advertisements for companies such as Intelius, which offer via the Web public information about individuals such as address, date of birth, criminal background, marriage records, and more.  *Id.* at ¶¶ 2, 15, 21, 22, 25.  Specifically, Dobrowolski alleges that Intelius uses "a method called Dynamic Keyword Insertion to plug the first and last name of any person searched into its otherwise generic advertisements."  *Id.* at ¶ 23.  Dobrowolski seems to suggest that there is something unique or nefarious about the use of Dynamic Keyword Insertion, but that is not the case.  In reality, Dynamic Keyword Insertion is a commonly used feature of advertisements run on search engines.  *See La. Pac. Corp. v. James Hardie Bldg. Prods.*, 2013 U.S. Dist. LEXIS 94875, *2 (N.D. Cal. July 8, 2013) ("One feature of Google AdWords is the 'Dynamic Keyword Insertion' function ('DKI'), which allows advertisers to submit an advertisement with a blank space in it to be automatically filled when a consumer's search triggers the advertisement.").

At various points in the Complaint, Dobrowolski refers to "products and services" sold by Intelius, *see, e.g.*, Compl. at ¶¶ 4, 17, 26, but the only "products and services" Dobrowolski identifies are access to publicly available information.  *See, e.g.*, *id.* at ¶¶ 1, 15, 18, 25.

Dobrowolski alleges that Intelius is an "online service that sells 'detailed profile reports.'" *Id.* ¶ 9 (citing http://corp.intelius.com). Dobrowolski equates the advertisement of publicly available data without permission from the data subject to misappropriating "name, photograph, image, or likeness" under IRPA. *See generally id.*

Dobrowolski never alleges that she actually visited the Intelius.com Web site — rather, she simply states that she "discovered that Intelius uses her name." *Id.* at ¶ 29. The Complaint alleges that "[a]lthough Intelius created numerous advertisements across several search engines, the advertisements are substantially the same, with all featuring Dobrowolski's full name and stating, 'We Found Anna Dobrowolski.'" *Id.* at ¶ 30. The Complaint then alleges that "[w]hen a consumer clicks on one of these advertisements, it directs him or her to Intelius's website, where various reports about Dobrowolski are offered for sale." *Id.* at ¶ 31. The Complaint does not specify whether Dobrowolski, her counsel, or someone else performed this search, when the search was performed, from whose computer the resulting screen shots were copied, or to whom the reports were offered. *Id.* at ¶¶ 22, 25, 31.

The Complaint contains numerous references to and screenshots from the Intelius Web site. Compl. at ¶¶ 1 n.1, 14 n.2, 16 n.3, 22, 25. Intelius's Terms and Conditions are posted to the Intelius Web site.[3] According to those Terms and Conditions:

> You agree that your use of the Intelius Databases is governed by the following terms and conditions: . . . **12. Waiver of Class Action and Jury Trial and Consent to Binding Arbitration. In any legal proceeding relating to your use of the Intelius databases, you agree to waive any right you may have to participate in any class, group, or**

---

[3] A true and correct copy of the Terms and Conditions available at https://www.intelius.com/useragreement.php when the Complaint was filed on January 25, 2017 is attached as **Exhibit A**. The same Terms and Conditions were in effect in October 2016 when Dobrowolski allegedly discovered the use of her name. Compl. at ¶ 29. Because the Complaint extensively refers to the Intelius Web site, the Court may consider the Web site in ruling on a motion to dismiss. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (holding that courts may consider "documents referenced in the pleading if they are central to the claim").

**representative proceeding and to waive any right you may have to a trial by jury.** Any claim, controversy, or dispute that arises under or relates to your use of the Intelius databases shall be referred by the aggrieved party to binding arbitration under the **Commercial Rules of the American Arbitration Association**.

Exh. A, ¶ 12 (emphasis in original). The Terms and Conditions further provide that "[t]his Agreement shall be governed by Washington law." Exh. A, ¶ 13.

The Intelius Web site referred to in the Complaint says that "Intelius has access to many of the world's most extensive databases and public record repositories. Our robust technology enables us to gather billions of public records annually from a multitude of government and professional entities and assign them to more than 225 million unique people." *See* "How We Do It," http://corp.intelius.com/ (as it existed on January 25, 2017), attached as **Exhibit B**.

Dobrowolski asserts the following proposed class:

All Illinois residents (1) whose names were displayed in one or more Intelius advertisement(s) on Google or Bing, and (2) who have never purchased any products or services from Intelius.

Compl. at ¶ 34. Excluded from the class are individuals involved in litigating this case and those who request exclusion. *Id.*

Dobrowolski's personal jurisdiction allegation against Intelius is limited to the following conclusory assertion: "This Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois." *Id.* at ¶ 9.

## IV.    Dismissal standards

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *See, e.g.*, *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). If in the face of a Rule 12(b)(2) challenge a plaintiff cannot establish a *prima facie* case of personal jurisdiction, the court may

dismiss the case for lack of personal jurisdiction based solely on written materials submitted to the court. *See, e.g.*, *Mi-Jack Sys. & Tech., LLC v. Babaco Alarm Sys.*, 2013 U.S. Dist. LEXIS 165295, *4 (N.D. Ill. Nov. 20, 2013) (dismissing for lack of personal jurisdiction without evidentiary hearing). Conclusory allegations of personal jurisdiction are insufficient. *See, e.g.*, *Cook Assocs. v. E.G. Snyder Co.*, 1988 U.S. Dist. LEXIS 14518, *3 (N.D. Ill. Dec. 21, 1988).

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6), the court, while construing the allegations in the light most favorable to the plaintiff, should not accept conclusory allegations and should assess whether the complaint plausibly suggests that the plaintiff has a right to relief, raising the possibility above a speculative level. *See, e.g.*, *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). To survive a motion to dismiss, the complaint must contain factual matter that, if true, allows the court to draw a reasonable inference that the defendant is liable for the conduct alleged. *See, e.g.*, *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012).

## V.     Argument

### A.     Dobrowolski has failed to properly plead and cannot make a *prima facie* showing of personal jurisdiction.

Dobrowolski alleges that Intelius is subject to personal jurisdiction in Illinois because Intelius "conducts business transactions in Illinois" and allegedly "committed tortious acts in Illinois." Compl. at ¶ 9. These are nothing more than conclusory statements — personal jurisdiction, if it exists, must be based on Intelius's contacts with the state of Illinois. The "contact" with Illinois directly alleged in the Complaint is that Intelius uses "Illinois residents' full names in its paid advertisements." Compl. at ¶ 6. The Court may be able to infer that Intelius markets to, sells to, and collects money from Illinois residents via the Intelius Web site, but that is not expressly alleged in the Complaint. Regardless, both the Seventh Circuit and the

U.S. Northern District of Illinois have held that these sorts of contacts are inadequate to establish personal jurisdiction in the context of the Internet. *See, e.g.*, *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014); *Gullen v. Facebook.com, Inc.*, 2016 U.S. Dist. LEXIS 6958 (N.D. Ill. Jan. 21, 2016). This Court should do the same.

There are two types of personal jurisdiction: general and specific. *See, e.g.*, *Advanced Tactical*, 751 F.3d at 800. Dobrowolski does not specify which she is asserting, although she cites the Illinois long-arm statute and refers to transaction of business and commission of a tort in Illinois. Compl. at ¶ 9 (citing 735 ILCS 5/2-209). But that citation does not specify whether Dobrowolski believes Intelius has transacted business and/or committed torts in Illinois in such a way as to subject it to general or specific jurisdiction. *Id.* Regardless, the Illinois long-arm statute is coextensive with the federal constitutional due process considerations, thus the Court need only concern itself with a federal constitutional analysis. *See Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (holding that the Illinois statute is coextensive with federal due process and thus "if the contacts between the defendant and Illinois are sufficient to satisfy the requirements of due process, then the requirements of both the Illinois long-arm statute and the United States Constitution have been met, and no other inquiry is necessary").

General jurisdiction requires that a defendant essentially be "at home" in the forum state and is difficult to show for any state that is not a principal place of business or state of incorporation. *See, e.g.*, *Advanced Tactical*, 751 F.3d at 800; *see also Kipp v. SKI Enter. Corp.*, 783 F.3d 695, 698 (7th Cir. 2015) (reasoning that a corporate defendant is generally subject to general jurisdiction only in "the state of [its] principal place of business and the state of its incorporation"). Intelius is a Washington-based company registered in Delaware. Compl. at ¶ 8. As such, Intelius is not subject to general jurisdiction in Illinois.

Specific jurisdiction focuses on the relations among the defendant, the forum, and the litigation. *See, e.g.*, *Advanced Tactical*, 751 F.3d at 801. An alleged effect on a plaintiff in the forum does not support the exercise of jurisdiction over a defendant. *Id.* The relationship between the defendant and the forum must arise out of contacts that the defendant itself creates. *Id.* Contacts between the plaintiff or third parties and the forum do not create personal jurisdiction over a defendant. *Id.* (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014)). Specific jurisdiction focuses on (1) intentional conduct by defendant, (2) aimed at the forum state, (3) with the defendant's knowledge that the effects would be felt (in other words, that the plaintiff would be injured) in the forum state. *Gullen*, 2016 U.S. Dist. LEXIS 6958 at *7.

In *Advanced Tactical*, the plaintiff argued that the defendant was subject to personal jurisdiction in Indiana because the defendant fulfilled several orders for the allegedly trademark-infringing products in Indiana; it knew that the plaintiff competitor was an Indiana company and could foresee that misleading emails and sales could harm the plaintiff in Indiana; it sent two misleading email blasts to a list that included Indiana residents; it had an interactive Web site available to Indiana residents; and it put Indiana consumers on its email list when they made a purchase. 751 F.3d at 801. The Seventh Circuit found these contacts were not sufficient to establish specific personal jurisdiction over the defendant in Indiana. *Id.* The court found that if these contacts were to give rise to jurisdiction, companies such as the defendant would be subject to *de facto* universal jurisdiction in contravention of U.S. Supreme Court precedent. *Id.* at 801.

As to the defendant's online activities, the Seventh Circuit found that neither outbound emails to Indiana consumers nor the interactivity of the Web site justified the exercise of specific personal jurisdiction. *Advanced Tactical*, 751 F.3d at 802-03. Both were so geographically

indifferent and omnipresent that the court found them to be poor proxies for intentional targeting of contacts with the state by the defendant. *Id.* at 803.

To similar effect are the Northern District of Illinois decisions in *Gullen v. Facebook, Bittman v. Fox*, 2016 U.S. Dist. LEXIS 63948 (N.D. Ill. May 16, 2016), and *AFI Holdings of Ill., Inc. v. NBC*, 2017 U.S. Dist. LEXIS 34077 (N.D. Ill. Mar. 9, 2017). In *Gullen*, a case that is particularly instructive here, the plaintiff alleged that Facebook obtained his biometric data from a photo uploaded by a third party in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. *Gullen*, 2016 U.S. Dist. LEXIS 6958 at *1-2. Even though the complaint alleged that Facebook was registered to do business in Illinois, had a sales and advertising office there, and targeted its facial recognition technology to millions of users in Illinois, the court found that the plaintiff had failed to make a *prima facie* showing of personal jurisdiction and dismissed the suit. *Id*. at *5-6. According to the court, Facebook's doing business in and having an office in Illinois had nothing to do with the unauthorized collection of biometric data from the plaintiff. *Id*. Additionally, facial recognition scanning was not limited to Illinois but was applied across Facebook generally. *Id.* Thus, the technology did not target Illinois specifically but targeted the entire Facebook user base generally around the globe.

Such is precisely the case here. Intelius is not alleged to — and in fact does not — sell access to publicly available information about only Illinois residents or to only Illinois residents, and Intelius does not specifically target, or direct contacts at, the state of Illinois in a way that justifies the exercise of personal jurisdiction over Intelius in Illinois. *See also Bittman*, 2016 U.S. Dist. LEXIS at *16, 25 (finding no *prima facie* showing of personal jurisdiction even though the defendant republished and commented on a video concerning an Illinois resident by an Illinois library because watchdog Web site was accessible to anyone, anywhere); *AFI*

*Holdings*, 2017 U.S. Dist. LEXIS 34077 at *24 ("[Plaintiff] does not allege that [defendant's] website is anything other than uniform nationwide. . . . In such circumstances, courts have found that the websites at issue were not targeted at the forum states.").

Dobrowolski's personal jurisdiction allegations boil down to vague and conclusory assertions that Intelius does business in Illinois and committed torts in Illinois. Dobrowolski fails to allege (and cannot allege) that Intelius engaged in any (1) intentional conduct, (2) expressly aimed at the forum state, (3) with Intelius's knowledge that the effects would be felt (in other words, that Dobrowolski would be injured) in the forum state. *Gullen*, 2016 U.S. Dist. LEXIS 6958 at *7. Rather, Intelius is an online directory accessible anywhere, and Dynamic Keyword Insertion is not limited to queries from or searches about Illinois residents. *La. Pac. Corp.*, 2013 U.S. Dist. LEXIS 94875 at *2 (explaining Dynamic Keyword Insertion).

Interestingly, Dobrowolski does not even allege a transaction involving her or the sharing of data about her via an actual sale — in fact, she affirmatively alleges that she is ***not*** an Intelius customer. *See* Compl. at ¶ 33 ("Plaintiff Dobrowolski is not and has never been an Intelius customer. She has no relationship with Intelius whatsoever."). She also does not allege that she herself interacted with the Intelius Web site. *See generally* Compl. If Dobrowolski did interact with the Intelius Web site, her claim is subject to arbitration under Washington law, *supra* p. 5, further buttressing the fact that Illinois lacks jurisdiction over Intelius in this matter. Furthermore, Intelius's adoption of Washington law in its Terms and Conditions helps to demonstrate that Intelius did not intend to subject itself to jurisdiction in Illinois. *See AS Engine Leasing, LLC v. Vision Airlines, Inc*., 2014 U.S. Dist. LEXIS 161518, *14 (N.D. Ill. Nov. 18, 2014) ("The inclusion of this New York choice of law provision cuts against the notion that

[defendant] 'purposefully availed [itself] of the benefits and protections of [Illinois'] laws' and therefore should have foreseen being haled into court in Illinois.").

Even if Dobrowolski had adequately pled sufficient contacts between Intelius and the state of Illinois, Dobrowolski has not made any allegations suggesting that Intelius had "fair warning" that it could be subject to personal jurisdiction in Illinois. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Supreme Court has outlined five non-exclusive factors that should be considered in evaluating the fairness of exercising personal jurisdiction: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering social policies. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). Application of these factors to the allegations in the Complaint shows it would be unreasonable to exercise personal jurisdiction over Intelius. Dobrowolski has not pled any facts to suggest that her interest in obtaining relief greatly outweighs the significant burden that would be imposed on an out-of-state company with no contacts in the state of Illinois by litigating this case here. Similarly, Dobrowolski has not alleged any special interest that the state of Illinois has in this matter. Rather, the interests of judicial economy and the shared interests of the states would be best served by handling any litigation against Intelius in its home state, where there would be more ready access to evidentiary material and greater oversight by state officials, if appropriate.

For the foregoing reasons, this case should be dismissed for lack of personal jurisdiction.

**B.      The First Amendment bars liability for the facts as alleged.**

Even if the Court found that Dobrowolski had pled a *prima facie* case of personal jurisdiction, the Court could dispense with this matter without the time and expense of discovery

because the First Amendment protects Intelius from liability. The advertisements at issue here are entitled to full First Amendment protection because they advertise Intelius's directory, which is itself protected by the First Amendment. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983). The protected nature of the directory is demonstrated by *Vrdolyak v. Avvo, Inc.*, 2016 U.S. Dist. LEXIS 123578 (N.D. Ill. Sept. 12, 2016), in which the court found that the plaintiff's IRPA claim against the Avvo.com attorney directory was barred by the First Amendment. *Id.* at *9. Avvo.com creates profile pages for attorneys consisting of information from public records, including name, education, address, phone number, and practice area. *Id.* at *2. The directory is a profit-seeking venture, making money through the sale of advertising to lawyers. *Id.* at *3. The plaintiff alleged that by placing ads for competing attorneys on his profile page (as well as ads for the defendants' own legal services), the defendant misappropriated the plaintiff's identity for commercial purposes in violation of IRPA. *Id.* at *4. The court disagreed.

Although the court acknowledged that the site did provide advertising as a profit-seeking venture, it nevertheless was protected by the First Amendment from an IRPA claim because the Web site was analogous to a Yellow Pages directory. *Id.* at *9. The Intelius Web site is similarly analogous, providing publicly available information about individuals in an easily searchable and retrievable format because people searching for this information find it of informational value, or, in other words, newsworthy.

In so holding, the *Vrdolyak* court compared Avvo.com to *Sports Illustrated*, noting that although the magazine contains ads, the articles within it are fully protected non-commercial newsworthy speech, and the use of ads does not convert the articles into less protected commercial speech. *Id.* at *10; *see also Commodity Trend Serv., Inc. v. Commodity Futures*

*Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("A speaker's publication does not lose its status as protected speech simply because the speaker advertises the publication."). The court contrasted *Sports Illustrated* with the Jewel grocery store chain's Michael Jordan commemorative ad in *Sports Illustrated. Vrdolyak*, 2016 U.S. Dist. LEXIS 123578 at *10 (citing *Jordan v. Jewel Food Stores*, 743 F.3d 509 (7th Cir. 2014)). Whereas the primary purpose of *Sports Illustrated* is to convey newsworthy information about sports, the primary purpose of Jewel in placing the Jordan ad was to sell groceries, according to the court. *Id.* The primary purpose of the Intelius Web site is to share useful and newsworthy public information about individuals with Web site users. The use of Dynamic Keyword Insertion in Intelius's advertisements does not undermine that purpose — the automated insertion of an individual's name into the advertisement is not an attempt to trade on that individual's name or likeness but rather an attempt to direct Internet users to a directory of useful and newsworthy public information that may have the information they are seeking. Thus, Intelius.com is like Avvo.com (not like Jewel) and warrants full First Amendment protection for non-commercial speech even though Intelius.com, like Avvo.com and *Sports Illustrated*, is a profit-seeking enterprise. Intelius is not using publicly available data to sell some other product or service. Intelius is using publicly available data to sell publicly available data, and its advertisements are entitled to the same level of First Amendment protection.

The *Vrdolyak* decision is firmly rooted in U.S. Supreme Court constitutional precedent finding that republication of public information is protected by the First Amendment. *See, e.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 497 (1975) (finding state could not sanction broadcaster for airing name of rape victim obtained from publicly available judicial records). Seventh Circuit precedent is to similar effect. In *Nieman v. Versuslaw, Inc*., 512 F. App'x 635,

636 (7th Cir. 2013), the plaintiff sued for invasion of privacy and retaliation against various online search companies, alleging that their publication of documents related to a lawsuit he brought against a former employer had caused him to be passed over by potential employers wary of his litigiousness. The court held that "[t]he First Amendment privileges the publication of facts contained in lawfully obtained judicial records, even if reasonable people would want them concealed." *Id.* at 637. It further held that "[t]he for-profit nature of the defendants' aggregation websites does not change the analysis; speech is protected even when 'carried in a form that is "sold" for profit.'" *Id.* at 638. Because all of the plaintiff's claims were based on the defendants' republication of documents contained in the public record, they were barred by the First Amendment privilege. *Id.* Similarly, Dobrowolski's IRPA claim fails under the First Amendment and should be dismissed with prejudice.

### C. Intelius's conduct as alleged is exempt from liability under IRPA.

According to IRPA, "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons in Section 20 of this Act . . . or their authorized representative." 765 ILCS 1075/30(a). "Identity" is defined as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." *Id.* at 1075/5. "Commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for the purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." *Id.* As relevant here, IRPA does not apply to "use of an individual's identity for non-commercial purposes, including any news,

public affairs, or sports broadcast or account, or any political campaign," *id.* at 1075/35(b)(2), nor does it apply to "[p]romotional materials, advertisements, or commercial announcements for a use described" under Paragraph (b)(2).  *Id.* at 1075/35(b)(4).[4]

Although Dobrowolski alleges misuse of her "identity," the only data point that she's identified under IRPA that clearly would qualify as part of her "identity" is her name.  *Id.* at 1075/5.  And Intelius is alleged to have used her name simply to identify her, not to promote some other product or service.  Moreover, the Complaint does not allege that Intelius made use of the plaintiff's specific identity — rather, it alleges that via Dynamic Keyword Insertion, the advertisements inserted the name "Anna Dobrowolski" into the text.  A brief Google search reveals more than a dozen individuals in the United States named Anna Dobrowolski,[5] and Dobrowolski has not alleged that Intelius used anything other than this name to "identify" her. *See Hooker v. Columbia Pictures Indus. Inc.*, 551 F. Supp. 1060, 1062 (N.D. Ill. 1982) ("Appropriation in this context means more than the mere coincidental use of a name that happens to be the same as that of the plaintiff.")  (internal quotation marks omitted).

Intelius is not alleged to be using any publicly available data for a commercial use to sell a product, merchandise, goods, or services, other than access to the data itself.  *Id.*  The basis of an IRPA claim is apparent endorsement where no consent to the endorsement has been given. *See also Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) (reasoning that the basis for an IRPA claim is "whether the plaintiff endorses, or appears to endorse the product in

---

[4] Alternatively, the Court should apply IRPA's exemption for use of an individual's identity to describe the individual in a book.  *See* 765 ILCS 1075/35(b)(1).  This argument is more fully set forth in the motion to dismiss filed by defendant Spokeo, Inc. in the related case of *Vinci v. Spokeo, Inc.*, Case No. 17-cv-01519 (Docket Entry 22 (the "Spokeo Motion"), at p. 9), and is incorporated herein by reference.

[5] Pursuant to Fed. R. Evid. 201(b), the Court may take judicial notice of facts that are generally known and can be accurately and reliably determined.

question"); *Trudeau v. Lanoue*, 2006 U.S. Dist. LEXIS 7956, *18 (N.D. Ill. Mar. 2, 2006) ("Defendants artfully displayed Trudeau's name and likeness in their sales mediums to give the false impression to consumers that Trudeau was affiliated with Defendants and that the consumer was in effect buying Defendants' products from Trudeau."). Dobrowolski has not alleged that Intelius used her identity to create any false impression of endorsement.

And perhaps most importantly, Intelius, as explained above in the First Amendment section of this brief, *supra* pp. 11-14, has a non-commercial purpose to disseminate publicly available data of interest to people seeking it as a matter of public concern. *Id.* at 1075/35(b)(2); *see also Zglobicki v. Travel Channel, LLC, et al.*, 2012 WL 725570, *2 (N.D. Ill. Feb. 2, 2012) (finding that broadcast of plaintiff in episode of *Extreme Fast Foods* was exempt from IRPA liability as matter of public concern); *Best v. Berard*, 776 F. Supp. 2d 752, 756-59 (N.D. Ill. 2011) (claim by plaintiff shown in *Female Forces* television show during field sobriety test exempt from IRPA liability as matter of public concern). As such, Intelius's use of the public information is exempt from liability under IRPA, as are the advertisements for that use. Accordingly, the Complaint should be dismissed with prejudice.[6]

> **D.    CDA Section 230 bars recovery based on the allegations.**

Dobrowolski's claims also are barred by CDA Section 230. *See* 47 U.S.C. § 230. According to the Seventh Circuit, "Section 230(c) of the Communications Decency Act of 1996 states, as Judge Grady had noted in the *Craigslist* case, that 'No provider or user of an interactive computer service shall be treated as the publisher or speaker of information provided by another information content provider.'" *Backpage.com, LLC v. Dart*, 807 F.3d 229, 233 (7th Cir. 2015)

---

[6] Finding that the conduct at issue here is exempt from liability under IRPA also would avoid potential Dormant Commerce Clause issues arising from application of IRPA in this context. *See* Spokeo Motion, at p. 17.

(citing 47 U.S.C. § 230(c)(1); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 965-69 (N.D. Ill. 2009)). As were Backpage and Craigslist, Intelius is an "intermediary . . . indifferent to the content of what it transmits." *Backpage.com*, 807 F.3d at 233-34.

For a claim to be barred by CDA Section 230, (1) the defendant must be a provider or user of an "interactive computer service," (2) the asserted claims must treat the defendant as a publisher or speaker of information, and (3) the challenged communications must be information provided by another information content provider. *See Nieman*, 2012 U.S. Dist. LEXIS 109069 at *23. Once CDA Section 230 immunity applies, providers are immune from state law claims arising out of content originated by a third party, regardless of the theory underlying the cause of action. 47 U.S.C. § 230(e)(3); *see also Craigslist*, 665 F. Supp. 2d at 965 ("Section 230 preempts contrary state law with certain inapplicable exceptions.").

Here, Dobrowolski has essentially pled that Intelius is an "interactive computer service." *See* Compl. at ¶¶ 1, 14-17; *see also* 47 U.S.C. § 230(f)(2) (defining an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions"). Dobrowolski's claim attempts to treat Intelius as a publisher of the advertisements set forth in the Complaint. Compl. at ¶¶ 3, 22-25, 30, 42; *see also* 47 U.S.C. § 230(c)(1) ("No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."). And the information, in light of the fact that it is publicly available, necessarily originated with another content provider. Compl. at ¶¶ 1, 14; *see also* 47 U.S.C. § 230(c)(1).

For Intelius to be liable for the advertisements containing Dobrowolski's name, Intelius

must be the **source** of that information.  "Section 230 immunity depends on the source of the *information* in the allegedly tortious statement, not the source of the statement itself."  *Doe v. Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 295 (D.N.H. 2008) (emphasis in original).  In determining whether a service provider is, in fact, an information content provider, courts have adopted a material contribution test.  *See Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014).  A service provider becomes liable only when it is "responsible for what makes the displayed content allegedly unlawful."  *Id.*

Here, the allegedly actionable "information" is Dobrowolski's name, and in the Dynamic Keyword Insertion process described in the Complaint, Intelius is **not** the source of that information.  Rather, the name that appears in the Intelius ad is "the first and last name that was typed into the search bar."  Compl. at ¶ 3.  The person conducting the Internet search is therefore responsible for displaying the allegedly unlawful content — but for the search query, Dobrowolski's name would never appear in an Intelius advertisement.  Thus, Intelius cannot be considered a material contributor to the information at issue and is entitled to immunity.

In fact, another federal court has already found that Intelius is immune from suit under CDA Section 230.  *See Obado v. Magedson*, 2014 U.S. Dist. LEXIS 104575 (D.N.J. 2014) (unpublished opinion), *aff'd by* 612 F. App'x. 90 (3d Cir. 2015) (unpublished opinion).  Although the *Obado* district court decision and Third Circuit affirmation were unpublished and are not precedent for this Court, the opinions are persuasive in finding that the following claims by the plaintiff against Intelius were barred by CDA Section 230: defamation, slander *per se* and *per quod*, libel *per se* and *per quod*, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of the New Jersey Consumer Fraud Act, punitive damages, publication of private facts, invasion of privacy, intrusion upon seclusion, false light,

violation of the Age Discrimination in Employment Act, unfair and deceptive practices under state law, common law fraud, defamation conspiracy, falsity, "damage to reputation, and to emotional and mental health," and "fault-negligence and actual malice." 2014 U.S. Dist. LEXIS 104575 at *4-5. Similarly, courts have found CDA Section 230 immunity applicable to right of publicity claims. *See, e.g.*, *Perfect 10, Inc. v. CC Bill LLC*, 488 F.3d 751, 768 (9th Cir. 2007), *amended on other grounds and superseded on denial of reh'g*, 488 F.3d 1102 (9th Cir. 2007). Accordingly, Dobrowolski's claims should be dismissed with prejudice under CDA Section 230.

**E.      The Court should award Intelius its fees.**

According to IRPA, "[t]he Court may award to the prevailing party reasonable attorney's fees, costs, and expenses related to an action under this Act." 765 ILCS 1075/55. If Intelius prevails on this motion, it will be a prevailing party under IRPA. Courts in similar situations have not hesitated to award a prevailing defendant a fee recovery. *See, e.g.*, *Love v. Mail on Sunday*, 2007 U.S. Dist. LEXIS 97061, *37 (C.D. Cal. Sept. 7, 2007) (awarding attorney's fees to prevailing right of publicity defendant); *Kirby v. Sega of Am., Inc*., 144 Cal. App. 4th 47, 62 (Cal. App. 2d Dist. 2006) (same).

An award of fees is particularly appropriate here because the forum shopping engaged in by Dobrowolski's counsel has so unreasonably and vexatiously multiplied these proceedings that the excess costs, expenses, and fees should be awarded to Intelius under 28 U.S.C. § 1927. It is also within the Court's "inherent authority to sanction [plaintiff] for willfully abusing the judicial process and/or pursuing a bad-faith litigation strategy by initiating this litigation in a patently inappropriate forum." *Boyer v. BNSF Ry. Co*., 832 F.3d 699, 701-02 (7th Cir. 2016). Dobrowolski would have been a member of the putative class in *Siegel*, but instead of joining in that case, Dobrowolski's counsel filed separately in federal court. Then, after *Siegel* was

voluntarily dismissed without explanation only days later, Dobrowolski voluntarily dismissed her original federal complaint and refiled in state court. As a result, Intelius was left with nothing to show for three months of litigation in *Siegel* and was forced to once again remove the action and then seek reassignment to this Court. *See Welk v. GMAC Mortg.*, 850 F. Supp. 2d 976, 999 (D. Minn. 2012) (awarding sanctions where plaintiff "engaged in brazen delay tactics and judge-shopping by voluntarily dismissing actions only to turn around and refile them again immediately afterwards").

## VI. Conclusion

The Court should dismiss this case because Dobrowolski has not pled and cannot make a *prima facie* showing of personal jurisdiction over Intelius in Illinois. If, however, the Court does not resolve that issue in Intelius's favor based on the pleadings, Intelius asks that the Court dismiss this case, with prejudice, under the First Amendment, IRPA itself, and/or CDA Section 230 and award Intelius its fees under IRPA for defending against this action.

Respectfully submitted,

INTELIUS, INC.

By:   /s/ Blaine C. Kimrey
    One of its attorneys

Blaine C. Kimrey
Bryan K. Clark
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T:  +1 312 609 7500

Dated:  April 20, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2017, a copy of the foregoing was electronically filed in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

*/s/ Blaine C. Kimrey*
Blaine C. Kimrey