**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANNA DOBROWOLSKI,

        Plaintiff,

    v.

INTELIUS, INC., and INSTANT
CHECKMATE, INC.,

        Defendants.

and

NICOLE VINCI,

        Plaintiff,

    v.

BEENVERIFIED, INC., and SPOKEO, INC.,

        Defendants.

No. 17 CV 1406
No. 17 CV 1446
No. 17 CV 1447
No. 17 CV 1519

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Anna Dobrowolski and Nicole Vinci bring putative class actions against defendants Intelius, Inc., Instant Checkmate, Inc., BeenVerified, Inc., and Spokeo, Inc. under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.* Defendants move to dismiss for failure to state a claim, and Intelius also moves to dismiss for lack of jurisdiction and for sanctions. For the following reasons, Intelius's motion is granted in part, denied in part, and the remaining defendants' motions to dismiss are granted.

## I.  Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id*. at 678–79.

All of the defendants attached exhibits to their motions to dismiss. None of these exhibits are considered in resolving the motions. Documents are only considered part of the pleadings if they are referred to in the complaint and are central to the plaintiff's claims. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). "[T]his is a narrow exception aimed at cases interpreting, for example, a contract," and "[i]t is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Id*.

The defendants argue that their exhibits—printouts from their websites—can be considered because the plaintiffs reference defendants' websites in their complaints. Intelius attached its terms and conditions for using its databases and its company summary. 17-cv-01406, [36-1], [36-2].[1] Instant Checkmate attached the results from an all-state Instant-Checkmate search of "Anna Dobrowolski." 17-cv-01446, [22-1]. BeenVerified attached its press Fact Sheet, its summary of information sources, and screenshots for searching "Nicole Vinci" on BeenVerified's

---

[1] Bracketed numbers refer to entries on the district court docket.

website. 17-cv-01447, [16-1], [16-2], [16-3]. Spokeo attached its search results for "Nicole Vinci." 17-cv-01519, [22-1]. These materials are not appropriate for consideration at the motion to dismiss stage. The passing references to defendants' websites in plaintiffs' complaints do not make everything on the companies' websites fair game for inclusion with a motion to dismiss (at least without turning it into a motion for summary judgment). The focal point of each complaint is the defendants' paid advertisements on internet search engines such as Google, Bing, or Yahoo, not searches for plaintiffs' names performed on the defendants' websites and not general information about the companies as provided on their websites.

## II. Background

Defendants Intelius, Inc., Instant Checkmate, Inc., BeenVerified, Inc., and Spokeo, Inc., provide online reports on people, using information compiled from public records and other sources. The defendants pay internet search engines to advertise their reports. When a consumer searches for a person's first and last name on one of these search engines, an advertisement is automatically generated using "Dynamic Keyword Insertion." The first and last name typed into the search engine is automatically plugged into an otherwise generic advertisement for the defendants' reports (respectively). The ads are designed to give the appearance that the reports contain valuable information about the searched-for person, such as arrest records, background check, phone number, and address. A consumer who clicks on the ad is then directed to the respective defendant's website, where the defendants offer membership or an information report for purchase.

Plaintiff Anna Dobrowolski discovered that Intelius and Instant Checkmate used her name in these advertisements. *See* 17-cv-01406, [2] ¶¶ 29–33; 17-cv-01446, [1-1] ¶¶ 29–33. She is not an Instant Checkmate or Intelius customer and has not authorized the use of her name in paid search ads. Plaintiff Nicole Vinci also discovered that BeenVerified and Spokeo used her name in these advertisements. *See* 17-cv-01447, [1-1] ¶¶ 29–33; 17-cv-01519, [1-1] ¶¶ 29–33. She is not a BeenVerified or Spokeo customer and has not authorized the use of her name in paid search ads. The plaintiffs' complaints are nearly identical.

Dobrowolski and Vinci bring putative class actions against the defendants under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq*. Their suits were originally filed in the Circuit Court of Cook County and then removed by the defendants pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).[2] *See Dobrowolski v. Intelius, Inc.*, 17-cv-01406, [1]; *Dobrowolski v. Instant Checkmate,*

---

[2] Diversity jurisdiction exists under CAFA. Dobrowolski and Vinci are both citizens of Illinois, bringing putative class actions on behalf of Illinois residents whose names were displayed in the defendants' ads. Defendants are all Delaware corporations. Intelius has its principal place of business in Washington state. 17-cv-01406 [2] ¶¶ 7–8. Instant Checkmate and Spokeo have their principal place of business in California. 17-cv-01446 [1-1] ¶¶ 7–8; 17-cv-01519, [1-1] ¶¶ 7–8. BeenVerified's principal place of business is in New York. 17-cv-01447, [1-1] ¶¶ 7–8. Plaintiffs seek an injunction, the greater of defendants' profits derived from these ads or the $1,000 per plaintiff statutory damages under IRPA, punitive damages, and attorney's fees. Using the $1,000 statutory damages as a conservative estimate, the $5,000,000 CAFA threshold is met if the putative class includes over 5,000 Illinois residents. Given the volume of defendants' advertisements, the population of Illinois, and number of Illinois residents that defendants have information for, each putative class plausibly exceeds 5,000 persons in Illinois. 17-cv-01406, [1] ¶¶ 18–22; 17-cv-01446, [1] ¶¶ 20–24; 17-cv-01447, [1] ¶¶ 12–16; 17-cv-01519, [1] ¶¶ 16–24. Plaintiffs have not contested removal under CAFA.

*Inc.*, 17-cv-01446, [1]; *Vinci v. BeenVerified, Inc.*, 17-cv-01447, [1]; *Vinci v. Spokeo, Inc.*, 17-cv-01519, [1].[3]

## III. Personal Jurisdiction

Intelius moves for dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). At this stage, all well-pleaded facts alleged in the complaint are taken as true and any factual disputes are resolved in plaintiff's favor. *Id*. Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. Fed. R. Civ. P. 4(k)(1)(A); *Tamburo*, 601 F.3d at 700. Because the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by federal due process, here the state statutory and federal constitutional inquiries merge, *Tamburo*, 601 F.3d at 700, and a court may exclusively analyze federal due process limitations on personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).

Dobrowolski makes no argument for general personal jurisdiction over Intelius, and indeed she cannot: Intelius is a Delaware corporation with its principal place of business in Washington state. 17-cv-01406, [2] ¶ 8; *see Daimler*

---

[3] Plaintiffs' consolidated response brief appears on the docket of each case; this opinion refers to the version filed at 17-cv-01406, [38-1].

*AG v. Bauman*, 134 S.Ct. 746, 760 (2014). It is not at home in Illinois. Specific jurisdiction exists when the defendant's suit-related conduct "create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014). This connection must arise out of arise out of contacts that the defendant itself creates with the forum state because "the plaintiff cannot be the only link between the defendant and the forum." *Id*. at 1122 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). Dobrowolski pleads that this court has jurisdiction because Intelius "conducts business transactions in Illinois and has committed tortious acts in Illinois," 17-cv-01406, [2] ¶ 9, and she argues that her complaint sufficiently pleads that Intelius offered to sell a report about a specific Illinois resident and used that resident's name in an advertisement for the report.

In this circuit, there is no Internet-specific test for specific jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (outlining cases); *cf. ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002); *see also Tamburo*, 601 F.3d at 703 n.7 (acknowledging *ALS Scan* but declining to apply an Internet-specific test). To satisfy due process, Intelius must have sufficient minimum contacts with Illinois such that that exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Advanced Tactical*, 751 F.3d at 800–01 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). For specific jurisdiction, Intelius's contacts with Illinois must directly relate to Dobrowolski's IRPA claim. *See Tamburo*, 601 F.3d at 702 ("To support an exercise of specific

6

personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction."). Specific jurisdiction is appropriate where (1) the defendant has purposefully directed its activities at the forum state, and (2) where the alleged injury arises out of the defendant's forum-related activities. *Tamburo*, 601 F.3d at 702 (citing *Burger King*, 471 U.S. at 472).

This inquiry is to ensure that an out-of-state defendant is not subject to specific jurisdiction for random, fortuitous, or attenuated contacts with the forum state. *Tamburo*, 601 F.3d at 702. Intentional-tort cases typically follow the specific-jurisdiction inquiry outlined in *Calder v. Jones*, 465 U.S. 783, 790 (1984), focusing on whether the conduct underlying the claims was purposefully directed at the forum state. *Tamburo*, 601 F.3d at 702; *but see uBID, Inc. v. GoDaddy Grp., Inc*, 623 F.3d 421, 429 (7th Cir. 2010) (applying the "purposefully availed" approach—generally used in breach of contract cases—to defendant sued under Anti-Cybersquatting Consumer Protection Act, who purposefully availed itself of the Illinois market through a massive nationwide advertising campaign and millions of dollars in Illinois sales). Here, Dobrowolski does not argue that Intelius "purposefully availed" itself of the privilege of conducting business in Illinois (even though Intelius's CAFA jurisdiction removal arguments emphasized that the company has data on "far more" than 5,000 Illinois residents). Unlike the plaintiff in *uBID*, Dobrowolski concedes Intelius's argument that national advertising is insufficient to subject the defendants to jurisdiction in Illinois. 17-cv-01406, [38-1] at 42 (citing *Transcraft Corp. v. Doonan Trailer Corp.*, No. 97 C 4943, 1997 WL

733905, at *9 (N.D. Ill. Nov. 17, 1997), which holds that "[a]s a general rule, national advertisements (including those on the Internet) are insufficient to subject a defendant to jurisdiction in Illinois"). Dobrowolski instead focuses on geographically targeted advertising.

Dobrowolski has not shown that Intelius expressly aimed its ads at Illinois, knowing that effects would be felt in Illinois. She contends that Intelius has sufficient minimum contacts with Illinois because Intelius purchases ad space on the internet search engines Google and Bing, and Google and Bing can geographically target their ads to particular locations, including Illinois. *See* Google, AdWords Help: Target ads to geographic locations, goo.gl/fJbBOi (last visited Aug. 29, 2017); Bing, Bing ads: Ad Targeting with Bing Ads, bit.ly/2qbFj9Y (last visited Aug. 29, 2017). In certain circumstances, targeting residents of a specific state through geographically-restricted online ads can show a substantial connection to a state, sufficient for personal jurisdiction. *Advanced Tactical*, 751 F.3d at 803. Dobrowolski looks to *Rilley v. MoneyMutual, LLC*, 884 N.W.2d 321 (Minn. 2016), where the plaintiffs submitted evidence that the defendant paid for Google ads to appear in response to Minnesota-specific internet searches, thereby showing that the defendant had sufficient minimum contacts for personal jurisdiction. *Id.* at 335, 337–38. (*Rilley* also noted that the defendant purposefully availed itself of doing business in Minnesota by sending over 1,000 emails to known Minnesotans, but Dobrowolski has not made a corresponding argument here.) As Intelius points out, Dobrowolski has only shown that geographically targeted ads are a possible service

offered by Google or Bing, not that Intelius actually uses geographically targeted ads. She assumes that Intelius used geographically targeted ads to exploit the Illinois market but without any supporting allegations or evidence. Indeed, at one point in her brief, Dobrowolski acknowledges that she merely suspects that Intelius has purchased ads targeted to Illinois. 17-cv-01406, [38-1] at 42, n.7.[4]

Dobrowolski has not shown how her alleged injury was caused by any alleged Illinois-related activity by Intelius. She pleads that Intelius pays internet search engines Google and Bing to display ads to every consumer who searches for a person's first and last name. 17-cv-01406, [2] ¶¶ 2, 17, 21–22. These ads are automatically generated by plugging the searched-for full name into an otherwise generic ad for an Intelius information report, which may or may not exist on that individual. 17-cv-01406, [2] ¶ 3 ("Thus, although Intelius creates the impression that it 'Found' somebody, all it did was plug the name of the person searched on Google or Bing into its otherwise generic advertisement."); *id.* ¶¶ 23–24. Dobrowolski does not allege that Intelius's ads have any specific geographic tie to Illinois, only that Intelius's ads geographically target her, an Illinois resident, whenever her name is searched. But "the mere fact that [defendant's] conduct

---

[4] Dobrowolski seeks jurisdictional discovery if the court is disinclined to reject Intelius' challenge to personal jurisdiction. 17-cv-01406, [38-1] at 42, n.7. But Dobrowolski must make out a prima facie case for personal jurisdiction before she is allowed discovery. *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). And if that information would still be insufficient to support personal jurisdiction, Dobrowolski states that she would consent to transfer the case to Washington state, where there is general jurisdiction over Intelius. 17-cv-01406, [38-1] at 42 n.7. Dobrowolski has not developed any argument for why transfer, rather than dismissal without prejudice, would be in the interest of justice at this early stage of the case.

affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 134 S.Ct. at 1126; *see Advanced Tactical*, 751 F.3d at 802–03 (defendant's knowledge that plaintiff was an Indiana company, making it foreseeable that its allegedly misleading emails and sales would harm the plaintiff in Indiana, did not establish minimum contacts); *AFI Holdings of Ill., Inc. v. National Broad. Co.,* No. 16 C 8652, 2017 WL 951256, at *8 (N.D. Ill. Mar. 9, 2017) (website that was uniform nationwide was not targeted at forum state to establish minimum contacts); *Bittman v. Fox*, No. 14 C 08191, 2016 WL 2851566, at *5 (N.D. Ill. May 16, 2016) (website accessible by anyone that published video of an Illinois resident was not conduct expressly aimed at Illinois for minimum contacts); *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016) ("Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook.").

Dobrowolski's argument ties the minimum contact analysis only to her contacts with the forum state, not Intelius's. Considering Dobrowolski's arguments and changing a single variable—her residency (for example, Indiana instead of Illinois)—there would be absolutely nothing tying Intelius's conduct to Illinois. There is no allegation that Intelius knew it was reaching into Illinois when it allowed Dobrowolski's name to be used in its ads. Her argument for specific jurisdiction is tied entirely to her connection to the forum state, which is an inappropriate basis for specific jurisdiction. "[A]fter *Walden* there can be no doubt

that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Advanced Tactical*, 751 F.3d at 802 (quoting *Walden*, 134 S.Ct. at 1122).

Dobrowolski's allegations and arguments have not established a prima facie showing of personal jurisdiction over Intelius, and her request for jurisdictional discovery is denied. Because there is no personal jurisdiction over Intelius, I do not reach its arguments for dismissal based on failure to state a claim.[5] I also do not reach its related arguments for "prevailing party" fees under IRPA, as dismissal for lack of personal jurisdiction does not make Intelius a "prevailing party" on the merits. *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603–06 (2001) (to be a "prevailing party," a litigant must receive at least some relief on the merits that alters the legal relationship of the parties). Intelius is dismissed for lack of personal jurisdiction.

### A.    Sanctions

Intelius also seeks an award of costs, expenses, and fees under 28 U.S.C. § 1927 and the court's inherent authority to sanction, arguing that Dobrowolski's counsel unreasonable and vexatiously multiplied the proceedings by bringing this action. Intelius contends that it had already been sued in a similar case pending in federal court, *Siegel v. Inome, Inc.*, Case No. 16-cv-10856, when Dobrowolski originally filed her federal lawsuit, *Dobrowolski v. Intelius, Inc.*, Case No. 17-cv-00429 (N.D. Ill.). Around the time the *Siegel* plaintiff voluntarily dismissed his case,

---

[5] In this opinion, any analysis of Intelius's Rule 12(b)(6) arguments relates only to the remaining defendants' adoption of them.

Dobrowolski dismissed her federal case and filed a state court action, which Intelius then removed to this court. Dobrowolski responds that Intelius has failed to show bad faith and that the *Siegel* putative class action cannot be attributed to Dobrowolski or her attorneys because *Siegel* involved a different plaintiff with different counsel.

Under § 1927 or the court's inherent authority, sanctions may be appropriate when the offender has conducted litigation in bad faith. *See Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 659 (7th Cir. 2017); *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009). Although Intelius may be frustrated at defending against various similar suits, its insistence that Siegel's and Dobrowolski's counsel deliberately coordinated efforts against Intelius lacks foundation. Without anything more specific to suggest that there was willful abuse of the judicial process, Dobrowolski's dismissal of her federal case and refiling it in state court does not amount to bad faith. Intelius's request for sanctions is denied.

## IV.    Illinois Right of Publicity Act

The remaining defendants seek dismissal under Rule 12(b)(6), asserting that Dobrowolski and Vinci have failed to state a claim under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq.*[6] The act prohibits the use of "an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person." 765 ILCS

---

[6] Although Intelius is dismissed for lack of personal jurisdiction and the remaining defendants bring separate motions to dismiss, the defendants adopted many of each other's arguments. The remaining defendants and their arguments are referred to collectively.

1075/30(a). Violators may be liable for the greater of $1,000 in statutory damages or "actual damages, profits derived from unauthorized use, or both," plus possible punitive damages. 765 ILCS 1075/40. IRPA defines "identity" as "any attribute of an individual that serves to identify that individual to an ordinary, reasonable viewer or listener, including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5. And "name" means "the actual name or other name by which an individual is known that is intended to identify that individual." 765 ILCS 1075/5. IRPA supplanted the common-law tort of appropriation of likeness (also called the right of publicity), 765 ILCS 1075/60, but the statutory and common-law claims require essentially the same three elements: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purposes. 765 ILCS 1075/30; *see Blair v. Nevada Landing P'ship*, 369 Ill.App.3d 318, 322–23 (2d Dist. 2006).[7]

The plaintiffs argue that they have sufficiently alleged an IRPA claim because the defendants' ads use Dobrowolski and Vinci's names (through Dynamic

---

[7] IRPA states that it supplants the common-law claim for appropriation of likeness but does "not affect an individual's common law rights as they existed" before IRPA was enacted. 765 ILCS 1075/60. According to the legislative history, IRPA was enacted to clarify the common law, which was "sparse" and "subject to inconsistencies." 90th Ill. Gen Assem., House Proceedings, April 24, 1997, at 225 (statements of Rep. Turner). It was also Illinois's response to the Lanham Act's federal legislation on unauthorized use of a person's likeness. 90th Ill. Gen Assem., House Proceedings, May 21, 1998, at 8 (statements of Rep. Turner). Defendants argue that the legislative intent was to narrow the right of publicity through IRPA but, as explained elsewhere in this opinion, the text of the statute is actually broader than the common law in some instances. *See, e.g., Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725, ¶ 16 ("[T]he Act expands the scope and availability of the [right of publicity] cause of action.").

Keyword Insertion reflecting an internet search for the plaintiffs' first and last names), without their consent, to promote defendants' information-reporting services. The plaintiffs have clearly alleged lack of consent, but the defendants argue that the plaintiffs' have failed to allege other elements of an IRPA claim. They contend that they do not use Dobrowolski or Vinci's "identities" because the ads only reflect the coincidental result of a third-party's internet search for their names, without any additional information (e.g., age, location, employment) to identify one "Anna Dobrowolski" or "Nicole Vinci" over another. Defendants point out that the ads could refer to any "Anna Dobrowolski" or "Nicole Vinci." Defendants also argue that, to be actionable, the use of a name or likeness must imply an endorsement and that the plaintiffs' identity must have intrinsic commercial value prior to the defendants' use. The plaintiffs respond that IRPA protects unauthorized commercial use of names and that the defendants' use of their names in ads was not coincidental. They argue that the ads were designed to entice potential customers by portraying to someone searching the internet for "Anna Dobrowolski" or "Nicole Vinci" that the defendants had located the plaintiffs and have information on them. Plaintiffs also argue that their names had commercial value to the defendants, otherwise the ads would not have included that information.

## A.    Name

The defendants argue that the use of the names "Anna Dobrowolski" and "Nicole Vinci"—without more detail in defendants' ads—is insufficient to identify the plaintiffs. The plaintiffs respond that IRPA allows identification by name

because the act specifically lists "name" as an attribute of a person's identity. 765 ILCS 1075/5.

The text of IRPA, however, defines "identity" and "name" in the context of identifying a particular individual. *See* 765 ILCS 1075/5 ("Identity" means "any attribute of an individual *that serves to identify that individual* to an ordinary, reasonable viewer or listener, including but not limited to (i) name;" "Name" means "the actual name or other name by which an individual is known *that is intended to identify that individual*.") (emphasis added). While "name" is listed as an attribute of an individual that serves to identify an individual, in context, IRPA does not state that a name alone is necessarily sufficient to identify an individual. Under the act, unauthorized use of a person's name for commercial purposes is actionable if the defendant's use serves to identify that individual to a reasonable audience. "Since many persons have the same name, mere name-sameness alone should not be sufficient proof of identification. There must be some 'plus factors' in the context of defendant's use which support an identification of plaintiff." J. Thomas McCarthy, 1 Rights of Publicity and Privacy § 4:49 (2d ed.); *see* Restatement (Third) of Unfair Competition § 46, cmt. d (1995) ("The use must therefore be sufficient to identify the person whose identity the defendant is alleged to have appropriated. If the appropriation consists of the use of a name, for example, the name as used by the defendant must be understood by the audience as referring to the plaintiff."); 31 Causes of Action 2d 121 § 7 (2006) ("If the allegation of infringement [on the right of

publicity] is founded upon the use of plaintiff's name, there needs to be something more than name similarity" unless the name "is so well known and unique.").[8]

Requiring more than name similarity is in accord with the pre-IRPA common law tort, which required "more than the mere coincidental use of a name that happens to be the same as that of the plaintiff." *Hooker v. Columbia Pictures Indus., Inc.*, 551 F.Supp. 1060, 1062 (N.D. Ill. 1982) (citing W. Prosser, Law of Torts § 117 at 804–07 (4th ed. 1971)); *see* McCarthy, 1 Rights of Publicity and Privacy § 4:49 (2d ed.). Under IRPA or the common law, a right of publicity claim only protects unauthorized use of an individual's name for commercial purposes when that name (either alone or in combination with other factors) is sufficient to identify the plaintiff.

The plaintiffs acknowledge this concept, [38-1] at 17, but argue that the defendants' use of their names was not "coincidental" because the defendants designed their ads to make a person searching the internet for "Nicole Vinci" or "Anna Dobrowolski" believe that the defendants had located these plaintiffs and had information on them. The plaintiffs also argue that they need not allege that their names were used in a way that identifies them to the exclusion of all others sharing their names. The plaintiffs' focus on "coincidence," however, reads *Hooker* and the treatises too narrowly. The overall point is that to establish liability for an

---

[8] Plaintiffs cite *Leopold v. Levin*, 45 Ill.2d 434 (1970), to argue that use of a name alone is sufficient, but *Leopold* did not hold that name alone was sufficient to state an appropriation claim. That case involved an infamous murderer. The name alone identified a specific individual.

IRPA (or common-law appropriation) claim, the plaintiff must be *identified* to a reasonable audience. *See* 765 ILCS 1075/5 ("Identity" means "any attribute of an individual *that serves to identify* that individual to an ordinary, reasonable viewer or listener.") (emphasis added).

Whether a plaintiff is indeed identified by the defendant's use is a question of fact. *See, e.g., Hirsch v. S.C. Johnson & Son, Inc.*, 90 Wis.2d 379, 398 (1979); McCarthy, 1 Rights of Publicity and Privacy § 3:10 (2d ed.) ("Identifiability is a question of fact."). Therefore, a plaintiff need not allege facts sufficient to show that they were identified to the exclusion of all other persons bearing their name or likeness. That said, a plaintiff must still allege facts to plausibly infer that she was identified to a reasonable audience by the defendant's use of her name or likeness. *See* McCarthy, 1 Rights of Publicity and Privacy § 3:10 (2d ed.) ("Plaintiff must plead and prove that the accused use "identifies" plaintiff."). Here, the defendants' ads only contain the names "Anna Dobrowolski" or "Nicole Vinci," without any additional context to identify the "Anna Dobrowolski" or "Nicole Vinci" as the plaintiffs. The complaints do not suggest that the ads identify the plaintiffs in any manner except for name. There is no allegation that either plaintiff has the kind of celebrity or public status to be identified by name alone, and there is nothing in the complaint to suggest that the ads identify this Anna Dobrowolski and this Nicole Vinci over any other person bearing that name.

The complaint alleges that the defendants benefitted from allegedly designing their ads to incorporate searched-for names. But that benefit does not

identify the plaintiffs in particular, and it is only the named plaintiff's individual right of publicity that is subject to a claim under the act. IRPA requires appropriation of attributes sufficient identify an individual to a reasonable audience, and the plaintiffs have failed to allege anything more than ads using names matching the plaintiffs' names, names that were populated from the results of third-party searches. Therefore, the plaintiffs have failed to state an IRPA claim.

### B.    Intent, Intrinsic Value, and Endorsement

Defendants raise other arguments in support of dismissal, and in the event plaintiffs file an amended complaint to attempt to cure the defect discussed above, I address those arguments related to the prima facie case under the act. The defendants argue that because the names "Anna Dobrowolski" and "Nicole Vinci" are automatically populated into defendants' generic advertisements as the result of a third-party's internet search, the plaintiffs could not show that the defendants intended to appropriate the names "Anna Dobrowolski" and "Nicole Vinci" into their ads. But the requisite intent is simply "to use the material about the plaintiff for trade purposes." Dan B. Dobbs et al., The Law of Torts § 740 (2d ed.); *see* McCarthy, 1 Rights of Publicity and Privacy § 3:2 (2d ed.) ("[N]either intent to identify plaintiff nor intent to injure plaintiff is required," but "what is required is proof that the defendant intended to gain a commercial advantage."). Defendants cite *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013), for the proposition that merely previewing a product relating to the plaintiff does not violate IRPA. But *Thompson* involved a unique situation where the plaintiff's photograph was the product itself. Dobrowolski and Vinci's IRPA claims are

different. Here, the defendants are alleged to have used the plaintiffs' names in otherwise generic advertisements to sell the defendants' information reports, which the defendants may or may not actually have. The plaintiffs' IRPA claims are based on the defendants' advertisements, not listings on the defendants' websites for information reports on the plaintiffs. Dobrowolski and Vinci have alleged that the defendants designed their ads to incorporate the results of a third-party's internet search for a person's full name. Although the defendants may not have intended to identify any particular person bearing that name (as opposed to identifying all persons bearing that name), the plaintiffs alleged the defendants' intent to use full names in their otherwise generic advertisements.

The defendants insist that a right of publicity claim requires the plaintiff's identity to have intrinsic or commercial value before the defendant's use. There is some pre-IRPA case law requiring this. *See, e.g., Pesina v. Midway Mfg. Co.*, 948 F.Supp. 40, 42 (N.D. Ill. 1996); *Hooker*, 551 F.Supp. at 1062; *Dwyer v. American Express Co.*, 273 Ill.App.3d 742, 749 (1st Dist. 1995); *Berkos v. National Broad. Co.*, 161 Ill.App.3d 476, 495 (1st Dist. 1987). IRPA, however, does not require a plaintiff's identity to have intrinsic value. The act recognizes each individual's "right to control and to choose whether and how to use [their] identity for commercial purposes." 765 ILCS 1075/10. It is not limited to protecting celebrities or public figures, who are more likely to have identities with intrinsic commercial value prior to a defendant's use. *See generally* 765 ILCS 1075/1 *et seq.*; 90th Ill. Gen Assem., House Proceedings, April 24, 1997, at 225 (statements of Rep. Turner)

(IRPA would protect celebrities and ordinary people "who do not wish to have their identities used in the commercial manner without their consent"). For liability, IRPA requires that a defendant use the plaintiff's identity for "commercial purposes," 765 ILCS 1075/30, but "[u]nlike the laws of some states, the Illinois statute does not require that the plaintiff's identity have commercial value or intrinsic value." McCarthy, 1 Rights of Publicity and Privacy § 6:56 (2d ed.); *see Villalovos v. Sundance Assocs., Inc.*, Case No. 01 C 8468, 2003 WL 115243, at *5 (N.D. Ill. Jan. 13, 2003). Because IRPA changed this aspect of the common-law tort, the defendants' citations to pre-IRPA cases requiring intrinsic value (prior to a defendant's use of the plaintiff's name or likeness) are of little weight. Defendants also argue that a post-IRPA case, *Maremont v. Susan Fredman Design Group., Ltd.*, No. 10 C 7811, 2011 WL 6101949 (N.D. Ill. Dec. 7, 2011), required appropriation of an identity with intrinsic value. But *Maremont* merely cited *Hooker* (a pre-IRPA case citing the Restatement) for the proposition that no appropriation occurs if the defendant does not pass itself off as the plaintiff *or* obtain the values or benefits of the plaintiff's identity.

The defendants also argue that a right of publicity claim requires an apparent endorsement because *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) noted that "[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question." Defendants maintain that the generic ads stating "Anna Dobrowolski Located" or "We Found Nicole Vinci" do not suggest to a reasonable viewer that

Anna Dobrowolski or Nicole Vinci endorse defendants' products. Under IRPA, a defendant may not use a plaintiff's identity for a commercial purpose. 765 ILCS 1075/30. IRPA does not require that the commercial purpose be an apparent endorsement of the defendant's product or service. Many right-of-publicity cases may involve false endorsements—for example in *Toney*, where a company allegedly used the plaintiff's photograph to market hair products without her permission. But a right of publicity claim is not limited to a false endorsement claim. "The Restatement emphasizes that infringement of the right of publicity is not merely a form of false advertising or false endorsement. This is because proof of falsity, deception or confusion is not required for infringement of the right of publicity. Using a person's identity merely to draw attention to a product or advertisement is an infringement." McCarthy, 1 Rights of Publicity and Privacy § 5:19 (2d ed.); *see* Restatement (Third) of Unfair Competition § 47 (1995) (For a right of publicity claim, "[p]roof that prospective purchasers are likely to believe that the identified person endorses or sponsors the user's goods or services is not required for the imposition of liability.").

The legislative history merely indicates that endorsements were the most prevalent example of IRPA's potential application and that the debates also touched on other concerns. Ultimately, "[t]he best evidence of the legislature's intent is the language of the statute itself." *Bruso by Bruso v. Alexian Bros. Hosp.*, 178 Ill.2d 445, 451 (1997). IRPA's definition of "commercial purpose" is broad, 765 ILCS 1075/5, and the act contains no endorsement requirement. Neither does IRPA have a falsity

requirement. *See Woodard v. Victory Records, Inc.*, No. 11 C 7594, 2016 WL 1270423, at *10 (N.D. Ill. Mar. 31, 2016); McCarthy, 1 Rights of Publicity and Privacy § 6:56 (2d ed.) ("In accordance with the law nationwide, a claim under the Illinois statute has no requirement of falsity or confusion."). And falsity is "[t]he key difference between the right of publicity and the commercial torts of false endorsement and false advertising." McCarthy, 1 Rights of Publicity and Privacy § 5:19 (2d ed.). The plaintiffs need not allege an endorsement or false endorsement to state an IRPA claim.

Because the plaintiffs have failed to state a prima facie IRPA claim based on the absence of sufficient identification of the named plaintiffs, I do not reach the defendants' arguments on their affirmative defenses that their ads fall under one or more IRPA exceptions, that the First Amendment bars the plaintiffs' IRPA claims, that plaintiffs' proposed interpretation of IRPA would be an impermissible extraterritorial application and violate the dormant Commerce Clause, and that plaintiffs' IRPA claims are barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1).[9] *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (Dismissal based on an affirmative defense is appropriately "*only* when the factual allegations in the complaint unambiguously establish all the elements of the defense."). Whether the plaintiffs have pleaded themselves out of court and are blocked by operation of various defenses are issues I need not address at this time.

---

[9] These are affirmative defenses because they do not depend on a failure of the plaintiffs' prima facie claim.

## V. Conclusion

Intelius's motion to dismiss and for sanctions, 17-cv-01406, [35], is granted in part, denied in part. Intelius is dismissed without prejudice for lack of personal jurisdiction. The remaining defendants' motions to dismiss, 17-cv-01446, [22], 17-cv-01447, [15], 17-cv-01519, [21], are granted. The complaints are dismissed without prejudice.[10]

ENTER:

Manish S. Shah
United States District Judge

Date: August 29, 2017

---

[10] The dismissal of the complaints is without prejudice because ordinarily "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend [his] complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).