UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNA DOBROWOLSKI, <br><br> Plaintiff, <br><br> v. <br><br> INTELIUS, INC. <br><br> Defendant. <br><br> and <br><br> NICOLE VINCI <br><br> Plaintiff, <br><br> v. <br><br> BEENVERIFIED, INC., and SPOKEO, INC., <br><br> Defendants. | No. 17 CV 1406 <br> No. 17 CV 1447 <br> No. 17 CV 1519 <br><br> Judge Manish S. Shah |

ORDER

The motions to dismiss plaintiffs' amended complaints, 17-cv-1406, [49], 17-cv-1447, [31], and 17-cv-1519, [40], are granted. Enter judgment and terminate civil cases.

STATEMENT

Plaintiffs Nicole Vinci and Anna Dobrowolski bring putative class actions against the defendants Intelius, BeenVerified, and Spokeo under the Illinois Right of Publicity Act, 765 ILCS 1075/1 *et seq*. Plaintiffs' original complaints were dismissed without prejudice—Intelius was dismissed for lack of personal jurisdiction, and the claims against BeenVerified and Spokeo were dismissed for failure to state an IRPA claim. The underlying facts of these cases are set out in greater detail in the previous opinion. *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 17 CV 1446, 17 CV 1447, 17 CV 1519, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017). In summary, defendants Intelius, BeenVerified, and Spokeo sold informational reports that included things like an individual's arrest record, background check, address, and phone number. To

sell these reports, defendants purchased ads to be displayed on search engines like Google and Bing. When a consumer typed someone's full name into the search engine, defendants' paid advertisements for its reports appeared among the results. Defendants' ads used Dynamic Keyword Insertion to plug the searched name into an otherwise generic ad to entice consumers to purchase a report on that person. For example, a Google search for "Anna Dobrowolski" returned an Intelius ad which said, "We Found Anna Dobrowolski – Current Address, Phone & Age." 17-cv-1406, [44] ¶ 23.[1]

In their original complaints, plaintiffs alleged defendants' use of their names in these advertisements violated IRPA. Plaintiffs failed to allege, however, that defendants appropriated their *identities* as required to state an IRPA claim because use of plaintiffs' names in the ads, without additional identifying details, was insufficient to identify plaintiffs, as opposed to other individuals with the same name. Plaintiffs' amended complaints are largely identical to their original complaints, with a few additional allegations. Plaintiffs have added that after a search engine returned a defendant's ad, a consumer who clicked on the ad was directed to the respective defendant's website, which plaintiff refers to as the marketing page. 17-cv-1406, [44] ¶¶ 26–27; 17-cv-1447, [24] ¶¶ 26–27; 17-cv-1519, [35] ¶¶ 26–28. The marketing page listed search results for reports on different individuals with the searched name. *Id.* To allow the consumer to identify the correct individual out of a list of people who shared the same first and last names, the marketing page also included additional identifying information, such as the individual's age, employment history, and location. 17-cv-1406, [44] ¶¶ 26–27, 34–37; 17-cv-1447, [24] ¶¶ 26–27, 34–37; 17-cv-1519, [35] ¶¶ 26–28, 35–38.

All three defendants move to dismiss plaintiffs' complaints for failure to state an IRPA claim. To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 678–79. Intelius also moves to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). A plaintiff has the burden of establishing personal jurisdiction, but where the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of the jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). At this stage, all facts alleged in the complaint are taken as true and any factual disputes are resolved in plaintiff's favor. *Id.*

---

[1] Bracketed numbers refer to entries on the district court docket.

*Personal Jurisdiction*

Where no federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state. Fed R. Civ. P. 4(k)(1)(A); *Tamburo*, 601 F.3d at 700. The Illinois long-arm statute authorizes the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. 735 ILCS 5/2-209(c). Dobrowolski does not argue that Illinois has general personal jurisdiction over Intelius—instead she argues that there is specific jurisdiction. To exercise specific jurisdiction over a nonresident, due process requires that the nonresident defendant have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S.Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). As a result, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden*, 134 S.Ct. at 1121.

Dobrowolski's original complaint failed to establish a prima facie case of personal jurisdiction because her argument focused on *her* ties with Illinois, not on Intelius's—which is what matters to establish personal jurisdiction over Intelius. And while she alleged that Intelius could have taken advantage of geographically targeted advertising, she did not assert that it had. Aside from adding conclusory allegations that this court has personal jurisdiction because Intelius "transacts significant business in this District, misappropriates the identities of people that it knows reside in this District, . . . and the unlawful conduct alleged in the Complaint occurred in and emanated from this District," 17-cv-1406, [44] ¶ 10, Dobrowolski's First Amended Complaint does not, on its own, justify a different outcome. But in her response to Intelius's motion to dismiss her First Amended Complaint, Dobrowolski asserts that Intelius has collected data on more than 5,000 Illinois residents from extensive databases and public records repositories.[2] Intelius, Dobrowolski argues, has reached into Illinois to obtain marriage, criminal, and other personal records—information that Intelius adds to its reports and uses to advertise them—and that this is sufficient for a prima facie showing of personal jurisdiction over Intelius.

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises

---

[2] New arguments made in opposition to a motion to dismiss may be considered so long as they are consistent with the complaint. *Chasensky v. Walker*, 740 F.3d 1088, 1096 n. 6 (7th Cir. 2014).

out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Conduct is purposefully directed at the forum if it is: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Intelius intentionally reached into Illinois to gather data on Dobrowolski and other Illinois residents, satisfying the first of these three requirements.[3] The latter two requirements overlap. *Tamburo,* 601 F.3d at 704. Intelius expressly aimed its information-gathering conduct at Illinois, amassing data on over 5,000 Illinois citizens. And it did so knowing that Illinois residents, like Dobrowolski, would feel the effects when it used their names and identifying information to advertise its reports. This is enough to allege that Intelius purposefully directed its activities at Illinois.

Dobrowolski has also alleged that her injury arose out of Intelius's forum contacts. There must be a causal connection between the defendant's forum contacts and the plaintiff's injury. *See Felland v. Clifton*, 682 F.3d 665, 676–77 (7th Cir. 2012) (noting, but not resolving, the split of authority on the details of this requirement). Other circuits use different tests—the most stringent of which requires that the defendant's contacts be the proximate cause of the injury. *Id*. Intelius's contacts with Illinois satisfy this test. Intelius reached into Illinois to gather data about Dobrowolski and other Illinois residents knowing that it would use that information to advertise its reports. Intelius's use of this information (Dobrowolski's injury) was a natural and probable result of obtaining that information (Intelius's forum contacts). *See Levy v. Minn. Life Ins. Co.*, 517 F.3d 519, 524 (7th Cir. 2008) (noting that proximate cause is not limited to the last or nearest cause of the injury). Taking Dobrowolski's allegations as true at this stage, Dobrowolski has established prima facie claim for personal jurisdiction over Intelius.

*Illinois Right of Publicity Act*

IRPA prohibits the "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 ILCS 1075/30. Commercial purpose is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765

---

[3] Intelius's gathering of data is not itself tortious conduct. But as discussed below, it is sufficiently related to Dobrowolski's injuries to support a prima facie showing of personal jurisdiction.

4

ILCS 1075/5. The Act exempts certain uses and does not apply to "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play, book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work, provided that the performance, work, play, book, article, or film does not constitute in and of itself a commercial advertisement for a product, merchandise, goods, or services." 765 ILCS 1075/35(b)(1). Nor does it apply to the "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." 765 ILCS 1075/35(b)(2). The Act does not cover promotional materials or advertisements for exempted uses. 765 ILCS 1075/35(b)(4).

Plaintiffs' amended complaints do not fix the defects that warranted dismissal of their original complaints for failure to state an IRPA claim. Plaintiffs again assert that defendants' advertisements use their identities for commercial purposes without their permission. They now add, however, that although the advertisements themselves do not contain any identifying information to distinguish plaintiffs from other individuals who share the same name, the additional personal details listed on the marketing page show that the advertisements use plaintiffs' identities, not merely their names. But plaintiffs overlook the fact that multiple people with the same name are listed on the marketing page. As a result, viewing the marketing page makes it no more or less likely that the ads identify plaintiffs, as opposed to another individual with the same name. So plaintiffs have failed to allege that the defendants' use of plaintiffs' names in their advertisements violates IRPA.

The use of plaintiffs' names on the marketing page does not violate IRPA either. Though plaintiffs are identified by the additional personal details on the marketing page, their identities are not being used for commercial purposes. The marketing page lists defendants' reports that are available for purchase, and for each listing there is a preview of the information in the underlying report. The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale. And this is not a commercial purpose as defined by the statute. *See Thompson v. Getty Images, Inc.*, No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ("The Court is unpersuaded that showing a buyer a photograph of a person that she is considering whether to buy qualifies as a 'commercial purpose' as the IRPA uses that term."); *see also Almeida v. Amazon*, 456 F.3d 1316, 1326 (11th Cir. 2006) (holding that Amazon's display of a book cover depicting plaintiff was not use for a commercial purpose under Florida's commercial misappropriation statute). The marketing page—plaintiffs' name for it notwithstanding—does not use plaintiffs' identities for a commercial purpose, so there is no IRPA violation.

      Because plaintiffs have failed to state an IRPA claim, I do not reach defendants' arguments on their affirmative defenses. *See Hyson U.S.A., Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (noting that because affirmative defenses often turn on facts not before the court at the pleading stage "dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense"). Defendants' motions to dismiss are granted and plaintiffs' complaints are dismissed, with prejudice, for failure to state a claim.

ENTER:

Date: May 21, 2018

                                            Manish S. Shah
                                            U.S. District Judge